UNITED STATES of AMERICA
U.S. DISTRICT COURT -- EASTERN DISTRICT OF MICHIGAN

SARAH SUCHYTA,

      Plaintiff,                           DEMAND FOR JURY TRIAL

 -vs-                                  Case No.
                                       Hon.

SZOTT M-59 CHRYSLER JEEP, INC.,
ALLY BANK LEASE TRUST,
FIRST NATIONAL BANK OF OMAHA, and
STEVEN CHUMBLER,

      Defendants.

## COMPLAINT AND JURY DEMAND

## JURISDICTION

1.      This court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337.

2.      As to any supplemental claims set forth herein, there are no exceptional circumstances or other compelling reasons for this Court to decline jurisdiction and the interests of justice would best be served if this Court heard these claims along with the federal claims.

## PARTIES

3.      The Plaintiff to this lawsuit is Sarah Suchyta who resides in Milford, Michigan in Oakland County.

4.      The Defendants to this lawsuit are as follows:

    a.      Szott M-59 Chrysler Jeep, Inc. ("SM59CJI") which is a corporation doing business in Michigan and which by statute and condition of licensing, may be served through its irrevocable resident agent, the Bureau of Regulatory Services, Business Licensing and Regulation Division, Richard H. Austin Building – 3rd Floor, 430 W. Allegan Street, Lansing, MI 48918.  This Defendant is a  "lessor" as that term is defined in the 15 U.S.C. §1667.  FNBOO is a "person" as that term is defined in the Fair Credit Reporting Act ("FCRA")15 U.S.C. §1681a. This Defendant is a  "lessor" as that term is defined in the 15 U.S.C. §1667.

    b.      ALLY BANK LEASE TRUST ("Ally Bank"), which is a bank doing business in Michigan; This Defendant is a  "lessor" as that term is defined in the 15 U.S.C. §1667.

    c.      FIRST NATIONAL BANK OF OMAHA ("FNBOO") which is a bank doing business in Michigan.  FNBOO is a "person" as that term is defined in the Fair Credit Reporting Act ("FCRA")15 U.S.C. §1681a.

    d.      STEVEN CHUMBLER ("Chumbler"), an individual residing in Clarkston, Michigan.  At all relevant times, CHUMBLER is the agent of FNBOO for the purpose of soliciting consumers to apply for credit with FNBOO and inputting data for FNBOO to obtain and use credit reports.  At all relevant times, CHUMBLER is the agent of SM59CJI.

2

## VENUE

5.      The transactions and occurrences which give rise to this action occurred in Oakland County.

6.      Venue is proper in the Eastern District of Michigan.

## GENERAL ALLEGATIONS

7.      On or about July 27, 2015 at approximately 10:15 am, Plaintiff contacted SM59CJI in order to inquire about leasing a 2015 Jeep  Grand Cherokee, VIN 1C4RJFBG8FC619065 ("the vehicle") being advertised by SM59CJI.

8.      On or about July 27, 2015 at approximately 10:15 am, Plaintiff spoke by phone with salesperson Jon-Michael Ross; during that phone conversation, Plaintiff provided SM59CJI with all of her personal information over the phone – including her date of birth and social security number – as SM59CJI informed Plaintiff that this was necessary to apply for credit and to process the lease paperwork.

9.      At no time on July 27, 2015 did the Plaintiff speak with Defendant CHUMBLER.

10.     At no time did anyone from SM59CJI ever discuss an application for any credit card or line of credit.

11.     At no time did Plaintiff authorize anyone to apply for credit in her name or on her behalf.

12.     On July 27, 2015 at 2:19 pm, SM59CJI and CHUMBLER stole Plaintiff's personal information used it to submit a credit application and to initiate a credit pull through FNBOO.

13.     On or about July 27, 2015 at approximately 4:51 pm, Plaintiff arrived at SM59CJI ready to sign lease paperwork.

14.    On or about July 27, 2015, Plaintiff executed a lease agreement with SM59CJI and Ally Bank for the vehicle.

15.    In the lease paperwork, SM59CJI and Ally represented that the mileage on the vehicle at that time was 489 miles.

16.    Before executing the lease agreement, SM59CJI made the following material representations ("material representations") which also constituted express warranties, were false, and related to the vehicle:

a.    That the vehicle had 489 miles on it; and

b.    That the residual value of the vehicle was $23,394.40.

17.    Defendant consistently and falsely in writing disclosed inaccurate mileage for the vehicle prior to Plaintiff driving the vehicle and prior to the Plaintiff consummating the lease.

18.    When Plaintiff drove the vehicle a few miles, she realized that the vehicle did not have 489 miles on it, but rather, the odometer read that the vehicle had in excess of 7,100 miles on it.

19.    Prior to July 27, 2015, Defendant FNBOO entered into an agreement with finance managers such as the Defendant STEVEN CHUMBLER, whereby finance managers would peddle FNBOO's credit cards to consumers; finance managers were paid by FNBOO or its affiliate to peddle the FNBOO credit cards.

20.    On or about July 27, 2015, CHUMBLER used the private, personal and confidential information of the Plaintiff to apply for credit with FNBOO in the Plaintiff's name without authorization from the Plaintiff.

21.    On or about July 27, 2015, CHUMBLER and FNBOO used or obtained the Plaintiff's credit report without a permissible purpose under the FCRA §1681b.

4

22.   On or about August 3, 2015, Plaintiff was alerted by a credit monitoring service that a $15,000 line of credit was opened in her name on July 27, 2015 through FNBOO.

23.   Plaintiff's employer, as a condition of her employment, requires the Plaintiff to report whenever she applies for or receives any line of credit.

24.   Plaintiff, upon discovering that someone had fraudulently applied for credit in her name, called FNBOO and reported the fraud.

25.   FNBOO provided the Plaintiff with information regarding the fraudulent application for credit, and specifically told her that someone at SM59CJI had applied for credit on her behalf.

26.   On August 3, 2015 at 3:24pm, Plaintiff contacted the sales person Jon-Michael Ross, with whom she had dealt at SM59CJI; the sales person conceded that no one should have applied for credit in her name and acknowledged the seriousness of the issue. Ross assured Plaintiff that he would contact his finance manager STEVEN CHUMBLER who Ross identified as the person in charge of the applications for lines of credit and have CHUMBLER contact Plaintiff.

27.   On August 3, 2015 at 3:46 pm, Defendant SM59CJI, through its agent, Defendant CHUMBLER contacted Plaintiff and explained the situation. CHUMBLER told Plaintiff that he was "not sure" how Plaintiff's identity could be used to apply for credit without her consent and that he may have "accidently" hit a wrong button on his computer; this was a lie as CHUMBLER, SM59CJI, and FNBOO intentially and willfully applied for the line of credit without the authorization of the Plaintiff and could not have done so accidentally.

5

28.    On August 3, 2015 at 5:14pm, Plaintiff received an email from CHUMBLER indicating that CHUMBLER contacted FNBOO and requested that the line of credit, which CHUMBLER applied for fraudulently be closed.

29.    On August 4, 2015, SM59CJI obtained the Plaintiff's credit report for an impermissible purpose in violation of the FCRA §1681b.

30.    On August 4, 2015 at 3:23 pm, Plaintiff contacted  Mary Carpenter from FNBOO, informed FNBOO that the account was opened fraudulently and requested that a copy of the credit application be sent to Plaintiff immediately so she could prove to her employer that she did not open up the line of credit.

31.    On August 4, 2015 at 3:23 pm, Plaintiff had a conference call with Eric Mann, SM59CJI's Manager and Jon-Michael Ross.  Plaintiff informed the SM59CJI that she was not happy with CHUMBLER's answers and that there was no way that CHUMBLER could have accidentally applied for credit in her name. SM59CJI took the position that it "accidentally" applied for credit in her name and that CHUMBLER had no incentive to apply for credit in her name.  SM59CJI explained falsely to the Plaintiff that since the credit card was cancelled it would no longer show on her credit report.  Of course, this was not true.

32.    On August 13, 2015 at 1:51pm, Plaintiff spoke with SM59CJI General Manager, Jeff Schneider, who admitted that SM59CJI and its agent, CHUMBLER, in fact, stole Plaintiff's personal information and used it to open a fraudulent line of credit in Plaintiff's name in order to gain compensation; Plaintiff requested a written statement from SM59CJI acknowledging that she, Plaintiff, did not initiate nor apply for the line of credit with FNBOO for her records and to show her employer, if necessary.  SM59CJI promised to

provide such a statement, however, to date, SM59CJI has refused to do so.

33.    On August 13, 2015 at 11:47am, Plaintiff contacted FNBOO to inform this Defendant that she had yet to receive a copy of the fraudulent credit application which she requested on August 4, 2015.  FNBOO stated that SM59CJI instructed FNBOO to send the fraudulent application to SM59CJI and not to send it to the Plaintiff.

34.    On August 17, 2015 at 12:49 pm Plaintiff contacted SM59CJI to inquire after the written statement which SM59CJI promised to send her; she did not receive a return phone call.

35.    On August 17, 2015, Plaintiff made a police report.

36.    On August 18, 2015 between 12:16 pm and 2:42pm, Plaintiff received numerous text messages from SM59CJI offering to lower her car payment to $324.92.  SM59CJI wanted the Plaintiff to come to the dealership and sign new paperwork.  Plaintiff explained to SM59CJI that she was unwilling to come in to the dealership unless she could review the new documents in advance.  SM59CJI refused to provide the Plaintiff with a copy of any documents to review in advance.  Upon information and belief, SM59CJI was attempting to coerce the Plaintiff to come in and sign a waiver or a release.

37.    Between August 19, 2015 and September 10, 2015, Plaintiff contacted Defendant ALLY BANK regarding her lease for the vehicle. In spite of the fact that ALLY BANK appears as the lessor on the title to the vehicle, ALLY BANK did not take assignment of the lease. Plaintiff has been ready, willing and able to pay the lessor of the vehicle but has been unable to pay – without an account ALLY BANK can't take a payment.

38.    On August 27, 2015 at 5:20 pm, Defendant CHUMBLER admitted to the Milford Police that he stole the Plaintiff's identity to fraudulently apply for credit.

7

39.     On September 1, 2015 at 1:07 pm, Plaintiff called SM59CJI and asked to speak with the owner.  SM59CJI never returned her call.

40.     Between September 3, 2015 and September 17, 2015, SM59CJI continued to harass the Plaintiff and threaten her in an attempt to get her to sign paperwork which SM59CJI refused to show her or send to her in a form she could review in advance.

41.     SM59CJI explained to Plaintiff that ALLY BANK refused to take assignment of the lease.

42.     ALLY BANK did not provide the Plaintiff with a written explanation as to why it refused to take assignment of the lease.

43.     Plaintiff has suffered damages as a result of the acts and omissions set forth herein.

## COUNT I -- Equal Credit Opportunity Act (ALLY BANK)

44.     Plaintiff incorporates the preceding allegations by reference.

45.     ALLY BANK is a creditor for purpose of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq*.

46.     Following the receipt of the complete application for credit, ALLY BANK was required to make a credit decision within 30 days.

47.     ALLY BANK  took adverse action for purposes of the ECOA.

48.     ALLY BANK was otherwise required to provide an adverse action notice.

49.     ALLY BANK failed to issue the adverse action notice as required by the ECOA.

50.     ALLY BANK has inadequate policies or procedures in place to comply with the ECOA's adverse action notice requirements.

51.     This failure to issue an adverse action notice constituted a wilful violation of the ECOA, 15 U.S.C. § 1691 by ALLY BANK

52.     ALLY BANK  has failed to maintain proper records of its credit actions in violation of the ECOA.

53.     This failure to properly maintain records  constituted a wilful violation of the ECOA, 15 U.S.C. § 1691 *et seq*. by ALLY BANK

54.     Plaintiff has suffered damages by this violation of ECOA.

### COUNT  I  -- Violation of Consumer Leasing Act, 15 U.S.C. § 1667 et seq.

### (SM59CJI and ALLY BANK)

55.     Plaintiff incorporates the preceding allegations by reference.

56.     Defendants failed to make disclosures in compliance with the Consumer Leasing Act.

57.     Plaintiff was damaged by the Defendants' violations of the Consumer Leasing Act.

### COUNT  II  -- Violation of Michigan Consumer Protection Act

### (SM59CJI and ALLY BANK)

58.     Plaintiff incorporates the preceding allegations by reference.

59.     Defendants are engaged in trade or commerce as that term is defined in M.C.L. § 445.902.

60.     Defendants have engaged in one or more of deceptive or unfair practices prohibited by the Michigan Consumer Protection Act, M.C.L.§ 445.903, including but not limited to the following:

   a.     Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

   b.     Using deceptive representations or deceptive designations of geographic origin in connection with goods or services.

c.     Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have.

d.     Representing that goods are new if they are deteriorated, altered, reconditioned, used, or secondhand.

e.     Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

f.     Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of  price reductions.

g.     Representing that a part, replacement, or repair service is needed when it is not.

h.     Representing to a party to whom goods or services are supplied that the goods or services are being supplied in response to a request made by or on behalf of the party, when they are not.

i.     Causing a probability of confusion or of misunderstanding with respect to the authority of a salesperson, representative, or agent to negotiate the final terms of a transaction.

j.     Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.

k.     Causing a probability of confusion or of misunderstanding as to the terms or conditions of credit if credit is extended in a transaction.

l.     Disclaiming or limiting the implied warranty of merchantability and fitness for use, unless a disclaimer is clearly and conspicuously disclosed.

10

m.   Representing that a consumer will receive goods or services "free", "without charge", or words of similar import without clearly and conspicuously disclosing with equal prominence in immediate conjunction with the use of those words the conditions, terms, or prerequisites to the use or retention of the goods or services advertised.

n.   Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

o.   Entering into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer has specifically consented to it.

p.   Failing, in a consumer transaction that is rescinded, canceled, or otherwise terminated in accordance with the terms of an agreement, advertisement, representation, or provision of law, to promptly restore to the person or persons entitled to it a deposit, down payment, or other payment, or in the case of property traded in but not available, the greater of the agreed value or the fair market value of the property, or to cancel within a specified time or an otherwise reasonable time an acquired security interest.

q.   Taking or arranging for the consumer to sign an acknowledgment, certificate, or other writing affirming acceptance, delivery, compliance with a requirement of law, or other performance, if the merchant knows or has reason to know that the statement is not true.

r.     Gross discrepancies between the oral representations of the seller and the written agreement covering the same transaction or failure of the other party to the transaction to provide the promised benefits.

s.     Charging the consumer a price that is grossly in excess of the price at which similar property or services are sold.

t.     Causing coercion and duress as the result of the time and nature of a sales presentation.

u.     Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.

61.    Plaintiff has suffered damages as a result of these violations of the Michigan Consumer Protection Act.

62.    Plaintiff suffers continuing damages as a result of these violations of the Michigan Consumer Protection Act.

## <u>COUNT  III – FRAUD IN THE INDUCEMENT</u>

### <u>(SM59CJI and ALLY BANK)</u>

63.    Plaintiff hereby incorporates all the facts and allegations set forth previously as if fully set forth herein.

64.    The Defendants have engaged in conduct intended to defraud Plaintiff into entering a contract which Plaintiff either did not understand or was coerced into signing under false pretenses which the Plaintiff relied upon reasonably.

12

65.    The Defendants have fraudulently and without justification withheld material information regarding the contract between the parties, the cost and/or financing, and what exactly Plaintiff would receive for Plaintiff's consideration, all resulting in inducing Plaintiff into the contract, and which, if known by Plaintiff, would have resulted in no consummation of the contract.

66.    Plaintiff relied on Defendants' false representations and were duped into entering into the agreement.

67.    The conduct of Defendants was designed and intended to induce Plaintiff into consummating the agreement under false pretenses.

68.    Plaintiff was, in fact, induced into entering the agreement described above, and suffered damages as a result.

### COUNT IV – MISREPRESENTATION

### (SM59CJI and ALLY BANK)

69.    Plaintiff hereby incorporates all the facts and allegations set forth previously as if fully set forth herein.

70.    Defendants made material representations which were false.

71.    The material representations were intended to induce the reliance of Plaintiff.

72.    The material representations did induce the reasonable reliance of Plaintiff.

73.    Defendants made the material representations with actual knowledge of their falsity.

74.    Defendants made the material representations with reckless disregard to their truth or falsity.

75.    Defendants made the material representations even though it should have known that they were false.

13

76.    These actions constitute misrepresentations upon Plaintiff by Defendants.

77.    Plaintiff has suffered damages as a result of these misrepresentations.

## COUNT  V  -- Federal Odometer Act (SM59CJI)

78.    Ms. Suchyta incorporates the preceding allegations by reference.

79.    By failing to provide Ms. Suchyta  with a legal and conforming odometer disclosure at the time of sale, SM59CJI has, with intent to defraud,  violated the Federal Odometer Act, 49 U.S.C. § 32701-32711.

80.    The odometer statement presented to Ms.  Suchyta  did not accurately reflect the odometer reading of the vehicle at the time the vehicle was sold to Ms.  Suchyta .

81.    SM59CJI failed to provide the required disclosure of mileage on the reassignment of title as required by 49 U.S.C. §§32701-32711 *et seq*.

## COUNT  VI  -- Statutory Conversion
## (SM59CJI, CHUMBLER, and FNBOO)

82.    Ms. Suchyta incorporates the preceding allegations by reference.

83.    Ms.  Suchyta maintains a property interest in her good name and identity.

84.    SM59CJI, CHUMBLER, and FNBOO  stole Ms. Suchyta's good name and identity and converted it to their use.

85.    SM59CJI, CHUMBLER, and FNBOO had no right to steal the Plaintiff's personal, private information and use it to apply for credit in her name.

86.    SM59CJI, CHUMBLER, and FNBOO were not acting on behalf of any individual or entity with the right apply for credit in her name.

14

87.    SM59CJI, CHUMBLER, and FNBOO actions were wilful or intentional, and in derogation of the rights and interests of Plaintiff.

88.    These acts constitute a willful or intentional conversion under MCL § 600.2919a entitling Ms. Suchyta to recover treble damages.

## COUNT VII -- Common Law Conversion

## (SM59CJI, CHUMBLER, and FNBOO)

89.    Ms. Suchyta incorporates the preceding allegations by reference.

90.    These actions constitute a conversion at common law, entitling Ms. Suchyta to recover the value of the vehicle converted.

## COUNT VIII -- Michigan Odometer Act (SM59CJI)

91.    Ms. Suchyta incorporates the preceding allegations by reference.

92.    The odometer statement presented to Ms. Suchyta did not accurately reflect the odometer reading of the vehicle at the time the vehicle was sold to Ms. Suchyta.

93.    SM59CJI knew or had reason to know of the inaccuracy of the odometer at the time it sold the vehicle to Ms. Suchyta.

94.    SM59CJI knew or had reason to know of the inaccuracy of the odometer statement relating to the vehicle, which statement was presented to Ms. Suchyta.

95.    SM59CJI failed to provide the required disclosure of mileage on the reassignment of title as required by M.C.L. §257.233a.

**COUNT IX – Violations of the Fair Credit Reporting Act (FNBOO)**

96.     Plaintiff reiterates and incorporates the allegations contained in all preceding paragraphs as if fully set out herein.

97.     FNBOO did not have a permissible purpose for the access and use of the report as set forth in 15 U.S.C. § 1681b.

98.     FNBOO violated the FCRA, 15 U.S.C. 1681b(f) by illegally accessing the consumer reports of the Plaintiff.

99.     FNBOO violated the FCRA, 15 U.S.C. 1681b(f) by falsely certifying the purpose for which it accessed the consumer reports of the Plaintiff.

100.    FNBOO knowingly violated the FCRA, 15 U.S.C. 1681b(f) by illegally accessing the consumer report of the Plaintiff.

101.    FNBOO wilfully violated the FCRA, 15 U.S.C. 1681b(f) by illegally accessing the consumer report of the Plaintiff

102.    FNBOO, in the alternative, negligently violated the FCRA, 15 U.S.C. 1681b(f) by illegally accessing the consumer reports of the Plaintiff.

103.    The above-alleged actions and omissions of the Defendant violated the FCRA, 15 U.S.C. §1681b(f).

104.    As a direct and proximate cause of the above-alleged actions and omissions of the Defendant, Ms. Suchyta has suffered an unwarranted invasion of her privacy, which may expose her to additional improper uses of the credit report or Her personal identification information.

105.    The Defendant is liable to the Plaintiff for actual damages, statutory damages and punitive damages for violation of the FCRA.

## COUNT X – Violations of the Fair Credit Reporting Act (SM59CJI)

106. Plaintiff reiterates and incorporates the allegations contained in all preceding paragraphs as if fully set out herein.

107. SM59CJI did not have a permissible purpose for the access and use of the report as set forth in 15 U.S.C. § 1681b.

108. SM59CJI violated the FCRA, 15 U.S.C. 1681b(f) by illegally accessing the consumer reports of the Plaintiff.

109. SM59CJI violated the FCRA, 15 U.S.C. 1681b(f) by falsely certifying the purpose for which it accessed the consumer reports of the Plaintiff.

110. SM59CJI knowingly violated the FCRA, 15 U.S.C. 1681b(f) by illegally accessing the consumer report of the Plaintiff.

111. SM59CJI wilfully violated the FCRA, 15 U.S.C. 1681b(f) by illegally accessing the consumer report of the Plaintiff

112. SM59CJI, in the alternative, negligently violated the FCRA, 15 U.S.C. 1681b(f) by illegally accessing the consumer reports of the Plaintiff.

113. The above-alleged actions and omissions of the Defendant violated the FCRA, 15 U.S.C. §1681b(f).

114. As a direct and proximate cause of the above-alleged actions and omissions of the Defendant, Ms. Suchyta has suffered an unwarranted invasion of her privacy, which may expose her to additional improper uses of the credit report or her personal identification information.

115. The Defendant is liable to the Plaintiff for actual damages, statutory damages and punitive damages for violation of the FCRA.

17

## COUNT  XI – Violations of the Fair Credit Reporting Act (CHUMBLER)

116.    Plaintiff reiterates and incorporates the allegations contained in all preceding paragraphs as if fully set out herein.

117.    CHUMBLER did not have a permissible purpose for the access and use of the report as set forth in 15 U.S.C. § 1681b.

118.    CHUMBLER violated the FCRA, 15 U.S.C. 1681b(f) by illegally accessing the consumer reports of the Plaintiff.

119.    CHUMBLER violated the FCRA, 15 U.S.C. 1681b(f) by falsely certifying the purpose for which it accessed the consumer reports of the Plaintiff.

120.    CHUMBLER knowingly violated the FCRA, 15 U.S.C. 1681b(f) by illegally accessing the consumer report of the Plaintiff.

121.    CHUMBLER wilfully violated the FCRA, 15 U.S.C. 1681b(f) by illegally accessing the consumer report of the Plaintiff

122.    CHUMBLER, in the alternative, negligently violated the FCRA, 15 U.S.C. 1681b(f) by illegally accessing the consumer reports of the Plaintiff.

123.    The above-alleged actions and omissions of the Defendant violated the FCRA, 15 U.S.C. §1681b(f).

124.    As a direct and proximate cause of the above-alleged actions and omissions of the Defendant, Ms. Suchyta has suffered an unwarranted invasion of her privacy, which may expose her to additional improper uses of the credit report or her personal identification information.

125.    The Defendant is liable to the Plaintiff  for actual damages, statutory damages and punitive damages for violation of the FCRA.

## <u>COUNT XII – Negligence (CHUMBLER) (alternative count)</u>

126.    Plaintiff reiterates and incorporates the allegations contained in all preceding paragraphs as if fully set out herein.

127.    CHUMBLER had a duty to refrain from applying for credit in the Plaintiff's name without her consent.

128.    In spite of this duty, CHUMBLER, without using due care, applied for credit in the Plaintiff's name without her consent.

129.    Plaintiff suffered damages as a result of this negligence.

## <u>JURY DEMAND</u>

130.    Sarah Suchyta demands a jury trial in this case.

## <u>REQUEST FOR RELIEF</u>

Plaintiff requests that this Honorable Court grant the following relief:

a.    *Assume jurisdiction over this case including all supplemental claims.*

b.    *Award actual damages.*

c.    *Award treble damages.*

d.    *Award statutory and punitive damages.*

e.    *Award statutory costs and attorney fees.*

19

Respectfully Submitted,

ADAM G. TAUB & ASSOCIATES
CONSUMER LAW GROUP, PLC

By:      s/ Adam G. Taub
         Adam G. Taub (P48703)
         Attorney for Sarah Suchyta
         17200 West 10 Mile Rd. Suite 200
         Southfield, MI 48075
         Phone:  (248) 746-3790
         Email:   adamgtaub@clgplc.net

Dated: October 12, 2015